UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RODNEY STORY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDMAN FINANCIAL, INC.<br><br>Defendant. | Case No.  2:25-cv-1079<br><br>**COMPLAINT - CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Rodney Story, individually and on behalf of others similarly situated, alleges the following against Goldman Financial, Inc. ("Goldman Financial" or "Defendant").

**I. NATURE OF ACTION**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell

COMPLAINT - CLASS ACTION – 1

phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered

COMPLAINT - CLASS ACTION – 1

an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Goldman Financial made telemarketing calls to residential telephone numbers, including Plaintiff's, that were listed on the National Do Not Call Registry and used pre-recorded messages in doing so.

6. Plaintiff now files this lawsuit seeking injunctive relief, requiring Goldman Financial to cease placing unsolicited calls to residential numbers on the National Do Not Call Registry, as well as an award of statutory damages and costs to Class members.

## II. JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

8. This Court has personal jurisdiction over Goldman Financial because it regularly conducts business in this District, including making telemarketing calls into this District, including soliciting business from residents of this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district, namely the telemarketing calls to the Plaintiff.

## III. PARTIES

10. Plaintiff is a citizen of Washington, residing in this Division.

11. Defendant Goldman Financial, Inc. is a corporation incorporated in New York.

## IV. TCPA BACKGROUND

**A.   The TCPA Prohibits Robocalls**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

COMPLAINT - CLASS ACTION – 1

can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

17. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016).

COMPLAINT - CLASS ACTION – 1

**B.     The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

18.     The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

20.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### V.  FACTUAL ALLEGATIONS

22.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23.     Plaintiff's residential telephone number is (206) 778-XXXX.

24.     Plaintiff personally listed his telephone number on the National Do-Not-Call Registry on December 17, 2006, and has not removed it from the Registry since that time.

25.     Plaintiff uses this telephone number for personal, residential, and household purposes.

26.     Plaintiff's telephone number is not associated with any business, nor does Plaintiff use the telephone number for business purposes.

27.     Plaintiff has never been a customer of Defendant nor consented to receive calls from Defendant.

COMPLAINT - CLASS ACTION – 1

28. Despite this, Plaintiff received at least two (2) voicemail solicitations from Defendant over the past three (3) months.

29. These voicemails were sent for the purpose of advertising Defendant's business financing services.

30. For example, on March 25, 2025, at 10:26 a.m., Plaintiff received the following voicemail from Defendant:

> Hi, good afternoon. This is Matt David calling from Goldman Financial. Hey, its Tuesday. I was actually trying to check in with you regarding funding your business. I believe I left you a message a little while back, but we never heard back from you regarding funding for your business, and I was actually just calling you because I want to follow-up on the approvals that we had for you. I don't know if there was a disconnect between the term and the dollar amount that you were approved for or what exactly. Do you know? Because you do not want to move forward with getting an account open here at Goldman. You know, we have some changes for underwriting guidelines at the first of the month, and we're able to approve a little more money for folks so let me know if you still need access to some capital. Probably could get everything done for you today. You can reach me back here at 954-636-6246, again that's 954-636-6246. I appreciate your time. Hope you're having a great start to your Tuesday, and we'll talk soon

31. This voicemail came from the number (954) 273-7235.

32. Plaintiff received yet another voicemail from Defendant on April 28, 2025, at 7:15 a.m.

33. The contents of this voicemail are as follows:

> Good afternoon. This is Jeff George. I'm calling from Goldman Funding Department. Today is Monday, April 28. I left a message last week, and I'm calling to follow up on this loan approval we had for your business. It looks like we received your file from a broker partner but never heard back from the broker or you. I'm just following up to see if you were still looking for capital for the business. I'm sure we could move forward with funding if you were still in need. If you could please return my call, my direct line is (954) 642-1242, again (954) 642-1242, and my name is Jeff George calling from Goldman.

34. This call came from the number (954) 642-1242.

35. On both occasions, Plaintiff's phone rang only once before Defendant's voicemail appeared directly in Plaintiff's voicemail inbox, depriving him of the opportunity to answer and request that Defendant cease calling.

36. Furthermore, the voicemails left for Plaintiff on at least these two occasions clearly utilized pre-recorded artificial intelligence technology due to the unnatural cadence and impersonal, generic message.

37. In an attempt to stop Defendant's persistent and harassing pre-recorded voicemails, Plaintiff sent Defendant a letter requesting that Defendant explain its illegal telemarketing.

38. On April 17, 2025, Plaintiff sent the letter to Defendant via certified U.S. mail at: 40 Wall Street, 28th Floor, New York, NY 10005.

39. Plaintiff requested that Defendant respond to his letter in writing by May 1, 2025.

40. Plaintiff did not receive a response from Defendant to his request.

41. Plaintiff and other individuals who received these pre-recorded voicemails suffered an invasion of privacy and were harassed by the conduct of Defendant.

### VI. CLASS ACTION ALLEGATIONS

42. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

43. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Goldman Financial, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.
>
> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for

COMPLAINT - CLASS ACTION – 1

at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase of Goldman Financial's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Washington CEMA Class:** All persons in the State of Washington whose (1) cellular telephone or pager numbers, (2) received a text message from or on behalf of Defendant encouraging the purchase of Goldman Financial's goods or services, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

44. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

45. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

46. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel who are experienced and competent in prosecuting complex class actions and will vigorously pursue this case on behalf of the Classes. Plaintiff has no interests that conflict with or are antagonistic to the Classes, and Defendant has no defenses unique to Plaintiff.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class include, but are not necessarily limited to, the following:

   a. Whether Defendant sent robocalls;

COMPLAINT - CLASS ACTION – 1

    b.   Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    c.   Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    d.   Whether Defendant sent telemarketing calls without providing the called party with the name of the individual caller or the name of the person or entity on whose behalf the call is being made;

    e.   The number of telemarketing calls Defendant sent to Washington residents' cell phones or pagers;

    f.   Whether Defendant should be held liable for violations committed on its behalf, if any; and

    g.   Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

48.   **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

49.   In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

COMPLAINT - CLASS ACTION – 1

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

50. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227

### (On Behalf of Plaintiff and the National DNC Class)

51. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

52. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

53. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls and/or telemarketing calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

54. These violations were willful or knowing.

55. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

56. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II

**Statutory Violations of the Telephone Consumer Protection Act U.S.C. § 227(b)**

**(On Behalf of Plaintiff and the Robocall Class)**

57. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58. The Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

59. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

61. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## COUNT III

**Violations of the WA CEMA and CPA, RCW 19.190.060 and RCW 19.86**

**(On Behalf of Plaintiff and the Washington CEMA Class)**

62. Plaintiff realleges and incorporates by reference each and every allegation set

COMPLAINT - CLASS ACTION – 1

forth in the preceding paragraphs.

63. It is a violation of the Washington CEMA to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service..." RCW 19.190.060.

64. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.* RCW 19.190.100; *Wright v. Lyft, Inc.,* 406 P.3d 1149, 1154-55 (Wash. 2017).

65. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the WA CEMA by initiating or assisting in the transmission of multiple electronic commercial text messages to telephone numbers assigned to Plaintiff and other Washington residents for cellular telephone or pager service.

66. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of CEMA's restrictions, Plaintiff and members of the Washington CEMA Class are each entitled to an injunction and $500 in damages for each such violation. RCW 19.190.040.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the National DNC Class as alleged herein;

B. Certification of the Robocall Class as alleged herein;

C. Certification of the Washington CEMA Class as alleged herein;

D. Appointment of Plaintiff as representative of the Classes;

E. Appointment of the undersigned as counsel for the Classes;

F. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(b)(3); (c)(5) and Washington State Law;

G. Injunctive relief for Plaintiff and members of the Classes, as described herein;

H. Attorneys' fees and costs, as permitted by law; and

I. Such other or further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 10th day of June, 2025.

By:   */s/ Samuel J. Strauss,* WSBA #46971
Samuel J. Strauss, WSBA #46971
Email:  sam@turkestrauss.com
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile:  (608) 509-4423

*Attorneys for Plaintiff*

COMPLAINT - CLASS ACTION – 1